# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## DOCKET NO. 3:21-CR-00234-FDW-DSC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| GREGORY MAXWELL PALMER, | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Defendant's "Motion to Dismiss Count Two of the Indictment," Doc. 15, and "Motion to Dismiss Indictment for Pre-indictment Delay and Supporting Memorandum of Law," Doc. 17, filed on July 22, 2022, and the parties' associated briefs and exhibits, Docs. 19, 20, 22 and 23.

These Motions were referred to the undersigned Magistrate Judge on September 15, 2022, pursuant to 28 U.S.C. § 636(b)(1), and are now ripe for consideration.

Having fully considered the record and counsel's submissions, the undersigned respectfully recommends that Defendant's Motion to Dismiss Indictment for Pre-indictment Delay be <u>denied</u> and Defendant's Motion to Dismiss Count Two of the Indictment be <u>granted</u>, as discussed below.

## I. FACTUAL BACKGROUND

On May 5, 2011, Defendant submitted an application for naturalization (N-400) stating that he had not committed a crime or offense for which he was not arrested. On October 5, 2011, he

appeared for a naturalization interview. At the conclusion of the interview, he signed the application for naturalization in the presence of a United States Citizenship and Immigration Services (USCIS) officer and affirmed that the contents of his application were true and correct. On the same day, the USCIS approved the application for naturalization (N-400). On October 20, 2011, he participated in a naturalization ceremony and was granted United States citizenship. The Government issued a Certificate of Naturalization.

On October 28, 2011, he submitted an application for a United States Passport. On November 3, 2011, the State Department issued him a Passport.

On December 13, 2012, Defendant was arrested and charged with child sex offenses alleged to have occurred in 2008. On June 6, 2013, he pled guilty to attempted statutory rape in violation of North Carolina General Statute § 14-27.7A. He was sentenced to a minimum/maximum term of 157 to 198 months.

On September 22, 2021, the Government charged Defendant in a two-count Indictment. Count one charges that on or about October 20, 2011, he "knowingly procured, contrary to law, his naturalization and United States citizenship, that is, in his Application for Naturalization (N-400) to become a United States citizen, he provided false and fraudulent information as to material facts about his criminal history by falsely representing that he had not committed a crime or offense for which he was not arrested" in violation of 18 U.S.C § 1425(a). Doc. 1. Count two charges that on or about October 28, 2011, Defendant "willfully and knowingly did and attempted to make a false statement in a passport application with the intent to induce and secure the issuance of a passport under the authority of the United States, either for his own use and the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such

laws, that is, including false and fraudulent documents with his passport application" in violation of 18 U.S.C. § 1542.

## II. DISCUSSION

### A. Motion to Dismiss for Pre-Indictment Delay (Doc. 17)

The primary protection against pre-indictment delay is the statute of limitations. United States v. Marion, 404 U.S. 307, 322 (1971). "Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they are made for the repose of society and the protection of those who may (during the limitation) ... have lost their means of defense." Id. (citation and internal quotation marks omitted). But even when a charge is brought within the applicable limitations period, the Fifth Amendment mandates dismissal when the prosecution's pre-indictment delay substantially prejudiced defendant's right to a fair trial. United States v. Garcia, 432 F. App'x 248, 250 (4th Cir.2011) (citations omitted).

The Fourth Circuit applies a two-part test to determine whether a pre-indictment delay warrants dismissal. United States v. McCoy, 129 Fed. Appx. 815, 819 (4th Cir. 2005). First, a defendant must show that he suffered "actual prejudice" from the pre-indictment delay. Id. Prejudice is shown "when the defendant has been 'meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected.'" Id. The Fourth Circuit has stressed that the burden to show actual prejudice is a heavy one. Jones v. Angelone, 94 F.3d 900, 907 (4th Cir. 1996). Second, if actual prejudice is shown, the court must then balance the demonstrated prejudice against the government's alleged need for the delay. Howell v. Baker, 904 F.2d 889, 895 (4th Cir. 1990). The inquiry then becomes whether the government's action in prosecuting after substantial delay violates "fundamental

conceptions of justice" or "the community's sense of fair play and decency." <u>United States v. Lovasco</u>, 431 U.S. 783, 790 (1977).

It is undisputed that the Government brought these charges within the applicable limitations period. But there was a substantial delay between the alleged federal offense in 2011, Defendant's guilty plea in 2013 on the underlying attempted statutory rape charge, and the 2021 Indictment here.

Defendant contends he suffered actual prejudice that impairs his ability to mount an effective defense at trial because 1) a key witness, his mother Ariel Clark, died in 2018; 2) he was denied timely appointment of federal counsel and therefore pled guilty to the state criminal charge without knowledge of any potential federal charges; 3) he will be subjected to a higher guideline sentence due to his state conviction, and 4) the Government's delays have negatively impacted his rehabilitation. For the reasons discussed below, these allegations fail to meet the heavy burden required to show actual prejudice.

First, when claiming prejudice on account of a deceased witness, the defendant must do more than allege that the witness testimony would have been beneficial. <u>United States v. Sample</u>, 565 F.Supp. 1166, 1175 (E.D. Va. 1983). "Defendant is required 'to demonstrate the general content of the lost evidence and show that it had a material connection with his defense to the crimes charged.'" <u>Id.</u> (citation omitted). Establishing prejudice on account of an unavailable witness is challenging because of the "difficulty ... establishing the general content and materiality of the dead witness' lost testimony. This is true because in most cases 'no one knows what [the witness] would have testified had he lived and been called to the stand....'" <u>Id.</u> (citation omitted).

With regard to the death of his mother, Defendant argues that she would have provided essential corroborating testimony to support his defense that he failed to understand the application questions and did not make any false statements. She would have testified that he had learning and comprehension issues as a child and that her husband used to physically abuse him when he failed in school. She would have testified that she continued to provide assistance to him throughout his adulthood when he had comprehension issues including helping him complete paperwork. She would have also provided helpful mitigation evidence concerning his history and characteristics for use at sentencing.

Defendant's conclusory assertions about his mother's presumed testimony are not sufficient to show prejudice. And "even when a defendant is able, through defendant's own testimony, to describe the general content of what a dead witness would have testified and its materiality, the defendant's incentive to emphasize, perhaps over-emphasize, the importance of the dead witness cannot be overlooked." Id. Defendant's claim of prejudice by this witness's absence appears speculative. See United States v. Lynch, No. 94–5350, 1995 WL 325670, at *4 (4th Cir. June 1, 1995) (concluding that actual prejudice cannot be proven through speculative or conclusory assertions of prejudice).

Defendant also argues that the Government's case was complete on December 11, 2012, when he allegedly made inculpatory statements to local police about the sex offense, and therefore, the clock began to run as to pre-indictment delay. But as recently explained by Judge Kenneth D. Bell, in United States v. Vongphakdy, 2021 WL 6197630, at *3 (W.D.N.C. December 30, 2021),

> [T]he government need not indict as soon as it has some evidence, or even probable cause. Rather, it is permissible for the government to have waited until [Defendant] had pled guilty before instituting a federal investigation into his alleged unlawful naturalization. This is the type of investigative delay that the Supreme Court has

held is consistent with Due Process. See Lovasco, 431 U.S. at 795-96 ("In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused,' precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of 'mere speed'. This the Due Process Clause does not require.") (internal citations omitted).

Id. In determining whether there is actual prejudice, this Court will look to the evidence as it would have been after his guilty plea in June 2013 and not December 2012 as Defendant argues.

Defendant argues that he was "powerless to exert his own investigative efforts" because the Government concealed its investigation and prosecution for more than eight years. Because of this "concealment" he was denied federal counsel who could have timely investigated the circumstances surrounding his answers on the application for naturalization as well as his alleged confession of December 11, 2012. Counsel could have also advised him of the consequences that any state conviction would have on his federal prosecution and future immigration status. According to Defendant, this prejudice flows directly from the Government waiting to charge him until after his guilty plea. But as discussed above, the Government was not required to indict him before he pled guilty to the state criminal charges. And Defendant does not even speculate how such an investigation could have assisted his defense.

Defendant also argues that the delay resulted in him pleading guilty and now the Government can use the conviction at trial and to enhance his sentence under the guidelines. But his criminal record is the same today as it was following his plea in 2013.

Lastly, Defendant argues the delay has resulted in excessive pretrial incarceration and negatively impacted his rehabilitation. He expected to be released from state custody upon

completion of his sentence and able to complete rehabilitative programs. He alleges that his incarceration in a federal facility for conduct alleged to have occurred many years ago has caused him much anxiety and "undermine[d] .... [his]successful rehabilitation." Any negative impact on Defendant's rehabilitation does not in any way prejudice his ability to mount an effective defense in this case.

Defendant has failed to show he has been meaningfully impaired in his ability to put on an effective defense due to the delay between June 2013 and September 2021. The undersigned respectfully recommends that his Motion to Dismiss for Pre-indictment Delay be <u>denied</u>.

### B. Motion to Dismiss Count Two of the Indictment (Doc. 15)

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged...." Fed. R. Crim. P. 7(c)(1). The Fifth and Sixth Amendments to the United States Constitution require that an indictment "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974). In <u>Hamling</u>, the Supreme Court stated that while "the language of the statute may be used in the general description of the offense … it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." <u>Id.</u>; <u>see</u> <u>United States v. Mathis</u>, 932 F.3d 242, 257 (4th Cir. 2019). Generally, an indictment must "set forth the offense in the words of the statute itself," and the statutory language "must be accompanied with such a statement of the facts ... [that] will inform the accused of the

specific offence ... with which he is charged." Hamling, 418 U.S. at 117–18 (quotation omitted); see United States v. Blankenship, 846 F.3d 663, 668 (4th Cir. 2017).

If a "defendant demonstrates that the allegations in the indictment, even if true, do not state an offense, then a court must dismiss the alleged offense." United States v. McFarlane, 548 F. Supp.3d 535, 540 (E.D. N.C. 2021) (citing United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004); see also, United States v. Brandon, 298 F.3d 307, 310 (4th Cir. 2002) ("Thus, the indictment must also contain a statement of the essential facts constituting the offense charged."). But "a court may not dismiss an indictment ... on a determination of facts that should [be] developed at trial." Engle, 676 F.3d at 415; see United States v. Treacy, 677 Fed. Appx. 869, 873–74 (4th Cir. 2017).

Titled "False statement in application and use of passport," § 1542 proscribes making "any false statement in an application for passport with intent to induce or secure the issuance of a passport . . . contrary to the laws regulating the issuance of passports." 18 U.S.C § 1542. It also criminalizes the use of a passport "the issue of which was secured in any way by reason of any false statement." Id.

The "securing" paragraph of §1542 requires the Government to prove "(i) the making of a false statement, (ii) with the intent to secure the issuance of a passport." See McFarlane, 548 F.Supp.3d at 541 (citing United States v. Salinas, 373 F.3d 161, 165 & n.2 (1st Cir. 2004)); see also United States v. White, 1 F.3d 13, 16 (D.C. Cir. 1993); United States v. Q'Bryant, 775 F.2d 1528, 1535 (11th Cir. 1985); United States v. Washington, 705 F.2d 489, 493 (D.C. Cir. 1983) (per curiam).

Count two charges Defendant under section 1542's "securing" paragraph and alleges that he made "a false statement in a passport application with the intent to induce and secure the issuance of a passport" by "including false and fraudulent documents with his passport application." in violation of 18 U.S.C. § 1542. Count two does not specify the false and fraudulent documents used to secure the passport. Nor does count two contain any allegedly false statements made to secure the passport. The only false statement alleged in the Indictment is contained in count one charging that Defendant committed naturalization fraud by "falsely representing" that he had not committed a crime or offense for which he was not arrested in his naturalization application.

Defendant argues that count two fails to allege facts constituting a prosecutable offense and must be dismissed. According to Defendant, the Government is charging him with making false statements in his passport application because he submitted his Certificate of Naturalization as part of the application. Defendant argues that his Certificate of Naturalization was issued by the Government and is not a false and fraudulent document.

The Government responds that Defendant ignores the fact that the passport fraud charge is in a speaking Indictment, with incorporates by reference both the Introduction and Count One. The Indictment, when read as a whole, makes clear the basis of the passport fraud charge.

The Court finds a recent case from the Eastern District of North Carolina, United States v. McFarlane, 548 F.Supp.3d 535 (E.D.N.C. 2021), instructive here. In McFarlane, the only false statements alleged in the indictment were those "McFarlane made during his naturalization proceedings." Id. at 542. But McFarlane "did not make these statements to secure" his passport. Id. Rather, he made them to secure his 1999 naturalization certificate. Accordingly, the court

determined that "the indictment fails to allege prosecutable offenses" under § 1542. Id. The court rejected the Government's arguments that false statements made during a naturalization proceeding infected the authentic documents, thereby making any later statements made to obtain a passport fraudulent. The court found that "the criminal statutes on which the government relies do not allow the government to use McFarlane's . . . false statement" during the naturalization process to prosecute him for his conduct in applying for a passport. Id. at 539. Thus, the court granted McFarlane's motion to dismiss. Id. at 542.

Similarly in this case, the Indictment fails to allege that Defendant made any false statements in his application to secure a passport. The only false statement alleged in the Indictment is Defendant's representation that he had not committed a crime or offense for which he was not arrested. But that statement was made in relation to the naturalization process. He did not make that statement to secure his passport. As in McFarlane, the alleged false statement made during the naturalization process does not make the subsequently issued Certificate of Naturalization fraudulent nor does it make any later truthful statements to obtain a passport fraudulent. Despite the alleged false representation made during the naturalization proceedings, Defendant "was a United States citizen . . . and was entitled to apply for and possess a United States passport" following his naturalization. Id. at 545. Therefore, the Court finds that Defendant did not make a false statement under section 1542 when seeking to obtain his passport and the Indictment fails to allege facts constituting a prosecutable offense under section 1542 in count two. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Count Two of the Indictment be granted.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant's "Motion to Dismiss Count Two of the Indictment," Doc. 15, be **GRANTED** and the "Motion to Dismiss Indictment for Pre-Indictment Delay and Supporting Memorandum of Law," Doc. 17, be **DENIED**.

## VI.  NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same.  Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Frank D. Whitney.

**SO ORDERED**.

Signed: October 5, 2022

David S. Cayer
United States Magistrate Judge